**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| I.A., E.B., L.C., M.X., L.A., A.L.G., A.G., N.B., TAHIRIH JUSTICE CENTER, C.S., Y.D., D.C., P.P., and A.C.,<br><br>      *Plaintiffs*,<br><br>  v.<br><br>WILLIAM BARR, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>      *Defendants*. | No. 1:19-cv-02530-TJK |

**I.A. PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF SUMMARY JUDGMENT**

The government's supplemental brief raises nothing new and its arguments lack merit.[1]

## I.   Agencies Cannot Rely On Assertions Unsupported By Or At Odds With The Administrative Record.

The government's supplemental brief repeats its insistence on deference to the agencies' "predictive judgments," no matter how unsupported.  *See* ECF No. 48 (Def. Supp. Br.) 3-4; ECF No. 17 (PI Opp.) 40, 44, 50.  But an agency's "predictive judgment . . . is entitled to deference" only to the extent it is "supported by substantial evidence."  *New York v. EPA*, 413 F.3d 3, 30 (D.C. Cir. 2005); *see also Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosive*s, 437 F.3d 75, 83 (D.C. Cir. 2006) (agency action must be supported by "reasonable extrapolations from some reliable evidence") (quotation marks omitted).  Moreover, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (quotation marks omitted).

The only predictive rationale the government identifies is the agencies' speculation that there was good cause to forgo notice and comment because advance notice of the Rule "could" prompt a surge of migrants.  PI Opp. 39.  That speculation is unsupported by the record, which does not include even a single example of a prior policy announcement triggering a migration surge, and, in any event, does not establish good cause.  *See* ECF No. 6 (PI Br.) 25-27; ECF No. 21 (PI Reply) 17-18; *see also CAIR Coalition*, ECF No. 22 at 17-19; *CAIR Coalition*, ECF No. 41-1 at 10-17; *East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922, 950 (N.D. Cal. 2019) (explaining that the Rule offered no evidence to support the surge prediction apart from "[a]

---

[1] Although Defendants stipulated that their supplemental brief would address only "non-duplicative issues," *CAIR Coalition v. Trump*, No. 1:19-cv-02117-TJK, ECF No. 50 ¶ 2, their brief repeats arguments previously raised in their preliminary-injunction and stay-of-removal opposition briefs.  To avoid further repetition, where possible, Plaintiffs refer the Court to their prior briefing and to the supplemental brief filed by the *CAIR* plaintiffs.

single, progressively more stale [newspaper] article" that addressed a different policy and did not document any resulting increase in migration).

The predictive judgment cases relied upon by the government, *see* Def. Supp. Br. 3-4, nearly all concerned the application of technical expertise to robust record evidence.  In *EarthLink, Inc. v. FCC*, 462 F.3d 1 (D.C. Cir. 2006), for example, "the FCC's predictions about the development of new broadband technologies" and the resulting market implications "involve[d] a high level of technical expertise in an area of rapid technological and competitive change," and "echo[ed] predictions" previously upheld because they were "supported *by very strong record evidence*." *Id.* at 9-12 (emphasis added) (quotation marks omitted).  Similarly, *In re Core Communications, Inc.*, 455 F.3d 267 (D.C. Cir. 2006), concerned the FCC's prediction that the growth of broadband internet would reduce the use "of dial-up service." *Id.* at 282.  The FCC grounded this prediction in undisputed evidence of "a declining [dial-up] subscriber base" and a report indicating that "increasing bandwidth requirements of popular website content will continue to erode dial-up usage." *Id.*  In *New York v. Nuclear Regulatory Comm'n*, 824 F.3d 1012, 1019-20 (D.C. Cir. 2016), the Nuclear Regulatory Commission's "technical . . . predictions" assessing environmental risks were the result of a "thorough and comprehensive" environmental impact analysis. *Id.* at 1019-20 (quotation marks omitted).  The ample evidence supporting the predictive reasoning in those cases simply underscore the paucity of the administrative record here.

The government also cites *Sacora v. Thomas*, 628 F.3d 1059 (9th Cir. 2010), but it is not analogous.  There, the Bureau of Prisons relied on its experience placing inmates in residential reentry centers when issuing a new non-binding guidance on evaluating placement requests. *Id.* at 1067-70.  The guidance aligned with Congress's own directive that such placements be as

short as practicable. *Id.* at 1066 n.7, 1067. Unlike here, there was no indication that the agency "ignore[d] evidence contradicting its position." *Butte Cty.*, 613 F.3d at 194.

Additionally, the government's assertion of blind deference on the foreign affairs exception, Def. Supp. Br. 4-5, continues to ignore the relevant case law contradicting its position. *See* PI Br. 23-25; PI Reply 18-19; *CAIR Coalition*, ECF No. 22 at 19-20; *CAIR Coalition*, ECF No. 41-1 at 18-20.

## II.     The Rule Is Unlawful And Should Be Set Aside Entirely.

### A.     The Rule Should Be Vacated.

If the Court grants summary judgment to Plaintiffs on any of their claims, it should vacate the Rule. The APA requires that unlawful agency action "shall" be "set aside." 5 U.S.C. § 706. As Defendants acknowledge, *see* Def. Supp. Br. 9 n.1, the clear, established approach in the D.C. Circuit is that a regulation held unlawful on its face under the APA shall be vacated in its entirety. *See Nat'l Mining Ass'n v. U.S. Army Corps of Engr's*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.") (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)); *see also id.* (explaining that, in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990), "all nine Justices" agreed that when a plaintiff prevails in a challenge to "a rule of broad applicability[,] . . . the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual") (quotation marks omitted). Defendants cite no binding case law in support of their incorrect claim that a facially unlawful rule should be vacated only as

to the plaintiffs. Moreover, the majority of Defendants' arguments about remedy address injunctive relief, not vacatur, and so are beside the point.[2] *See CAIR* Supp. Br. II.1.

### B.     Any Injunctive Relief Should Be Nationwide.

If the Court determines that injunctive relief, in addition to vacatur, is warranted—e.g., if there is reason to believe that Defendants will not acquiesce nationwide in this Court's order, *cf. O.A. v. Trump*, No. CV 18-2718 (RDM), 2019 WL 3536334, at *29 (D.D.C. Aug. 2, 2019)—such relief should be nationwide. A district court's authority to issue nationwide relief is well established and consistent with Article III. *See, e.g.*, *Pennsylvania v. President United States*, 930 F.3d 543, 575 (3d Cir. 2019); *Texas v. United States*, 809 F.3d 134, 188 & n.211 (5th Cir. 2015). Here, fully enjoining the Rule ensures uniformity in the immigration context; avoids administrability problems; is supported by the equities; and is necessary to afford Plaintiffs complete relief.

Nationwide injunctive relief is appropriate given the immigration context, where courts have often recognized the importance of uniformity. *See, e.g.*, *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018); *Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476, 511 (9th Cir. 2018); *Texas*, 809 F.3d at 187-88. The case for uniform policy application is especially strong here, as asylum seekers enter the United States in multiple judicial circuits, are transferred between circuits at the government's unilateral discretion while detained, relocate upon release from custody, and have their immigration proceedings across the country.

Because asylum seekers enter the United States at various points across the southern border and frequently move between circuits during the course of their asylum proceedings, a

---

[2] The out-of-circuit case Defendants cite, *Virginia Society for Human Life v. FEC*, 263 F.3d 379 (4th Cir. 2001), *see* Def. Supp. Br. 8, considered whether a regulation violated the First Amendment and whether a nationwide injunction was warranted, *see* 263 F.3d at 392-93, not whether vacatur was warranted.

geographically limited injunction would lead to administrability problems. *See Texas*, 809 F.3d at 188 ("[T]here is a substantial likelihood that a geographically-limited injunction would be ineffective because DAPA beneficiaries would be free to move among states."); *Pennsylvania*, 930 F.3d at 576; *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 437-38 (E.D.N.Y. 2018).

Equitable considerations also tip sharply in favor of nationwide injunctive relief. *See Kansas v. Nebraska*, 135 S.Ct. 1042, 1053 (2015) (in cases involving federal law and the public interest, "a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake") (citations and quotation marks omitted); *Inland Steel Co. v. United States*, 306 U.S. 153, 157 (1939) ("[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public— whose interests the injunction may affect."). This case does not involve a government policy that will be implemented slowly, or that will trigger only remote or reversible harms. The Rule went into effect immediately, without notice to the public or any opportunity for comment, putting thousands of asylum seekers, including Individual Plaintiffs, at imminent risk of removal to their countries of persecution. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("[T]here is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."). These injuries cannot be remedied. Nor can the harms to Plaintiff Tahirih be remedied after the fact, as this is an APA case with no damages remedy available. *See* PI Reply 23 n.13. The Rule also upends a longstanding principle of asylum law—that mere transit through another country will not serve as a categorical bar to asylum in the United States—that had endured for nearly four decades. These equitable considerations plainly outweigh those asserted by the government.

Ordering nationwide injunctive relief will not preclude other challenges to the Rule from proceeding and yielding separate, appealable determinations. Courts can and often do issue parallel or different decisions on the same legal questions notwithstanding injunctions issued by other courts. *See, e.g.*, *O.A.*, 2019 WL 3536334, at *2, *35 (granting plaintiffs summary judgment on challenge to first asylum ban, which had already been preliminarily enjoined nationwide); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 951 (N.D. Ill. 2017) (enjoining policy restricting Byrne JAG grant nationwide); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 659 n.30 (E.D. Pa. 2017) (enjoining the same policy despite *Chicago* injunction). Indeed, another challenge to the Rule at issue here is proceeding expeditiously in the Ninth Circuit, with argument on a preliminary-injunction appeal set for December 2, 2019.[3]

Finally, nationwide relief is necessary to completely remedy Plaintiffs' injuries. Plaintiff Tahirih Justice Center operates nationwide and serves asylum seekers who enter and have their immigration proceedings across the country. *See* ECF No. 6-1 (Cutlip-Mason Decl.) ¶¶ 2, 37. A geographically limited injunction would not fully remedy its injuries, as some asylum seekers would remain subject to the Rule. Serving those individuals requires Tahirih to expend significantly more resources than they otherwise would, because Tahirih's clients must seek

---

[3] The government cites *United States v. Mendoza*, 464 U.S. 154 (1984), Def. Supp. Br. 7, but that case makes clear that percolation can continue even where there has been a "final decision." 464 U.S. at 160; *see id.* at 158-62 (holding that the United States is not subject to nonmutual offensive collateral estoppel, and so may relitigate an issue despite losing it in a prior case).
   *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011), which the government cites, Def. Supp. Br. 7, is likewise inapposite. In vacating the nationwide injunction in that case, the Ninth Circuit relied upon the district court "itself rais[ing] serious questions [about] whether it should have entered such a sweeping injunction," including its finding that a nationwide injunction "would not be in the public interest," and on the plaintiff's concession that a narrower injunction would have afforded complete relief. 638 F.3d at 665. *See also Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987) ("[A]n injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled.*") (emphasis in original).

protection defensively, rather than affirmatively, and are limited to withholding of removal and relief under the Convention Against Torture. *See id.* ¶¶ 19-23. Moreover, if an injunction were geographically limited, Tahirih would have to divert resources to create and deploy two sets of training materials and programs—one for those subject to the Rule and one for those not.

Limiting injunctive relief to Tahirih and its "bona fide clients," Def. Supp. Br. 12, also would not fully remedy Tahirih's harms, and would be unworkable. Tahirih serves many asylum seekers who are not retained as clients for direct representation through its "administrative advocacy, legislative campaigns, and outreach"; "training and education services to professionals" who "assist immigrant[s]"; "Know-Your-Rights presentations"; and "asylum and other immigration clinics." Cutlip-Mason Decl. ¶¶ 7-8; *see also id.* ¶ 24. These programs are integral to Tahirih's work, and critical for individuals trying to navigate the U.S. asylum process. An injunction limited to Tahirih's retained clients thus would not reach an important population Tahirih serves, and would leave unremedied the harms to these key programs. Further, such an injunction would create a perverse dynamic. Many thousands of asylum seeker would seek Tahirih's representation, thereby disrupting existing legal service networks and overwhelming the operations of a relatively small and underfunded organization. And Plaintiffs would regularly have to return to the Court to "affirmatively identify" their constantly evolving set of clients, Def. Supp. Br. 12, burdening judicial resources.

    **C.**    **Section 1252 Does Not Foreclose Vacatur Or Injunctive Relief.**

Section 1252(e)(1) addresses challenges to individual expedited removal orders, and does not limit relief here. *Contra* Def. Supp. Br. 9-10. This case is *not* an "action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)," 8 U.S.C. § 1252(e)(1)(A), but a challenge to an unlawful Rule. *See* PI Reply 9; ECF No. 39 (Stay Reply) at 7.

Section 1252(e)(1)(B)'s prohibition on class actions also does not bar vacatur or injunctive relief. On Defendants' view, holding an agency action unlawful and ordering that it no longer be applied—the standard remedy in an APA case, *see Nat'l Min. Ass'n*, 145 F. 3d at 1409-10—is always the same as class-wide relief. But courts regularly order that an unlawful regulation be vacated or enjoined without first certifying a class action.[4]

Defendants are incorrect that relief under § 1252(e)(3) is limited to a "determination" of the Rule's legality, which they interpret to mean a declaratory judgment. Def. Supp. Br. 10. When § 1252(e)(3)(A) states that judicial review "shall be limited to determinations" of challenged policy's lawfulness, its use of the term "determinations" refers to the types of legal rulings that can be made in a § 1252(e)(3) action, not the form of relief that may be issued. Once the court has ruled—i.e., made its determination about the challenged policy's lawfulness—the ordinary remedies are available. *See Grace v. Whitaker*, 344 F.3d 96, 142 (D.D.C. 2018); PI Reply 8-9; Stay Reply 8-9. Defendants' argument to the contrary is untenable, as it would mean no injunctive relief would be available at all. Congress could not have intended to authorize a legal action in which the court was unable to order an effective remedy, thereby forcing courts to issue effectively advisory opinions.

Nor does § 1252(f) prohibit vacatur or injunctive relief here. Section 1252(f)(1) "'prohibits federal courts from granting classwide injunctive relief *against the operation of §§ 1221-123[2]*.'" *Jennings v. Rodriguez*, 138 S.Ct. 830, 851 (2018) (emphasis added). Plaintiffs do not ask this Court to enjoin or restrain any part of §§ 1221-1231, but instead to

---

[4] *American Immigration Lawyers Association v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000), on which Defendants rely, *see* Def. Supp. Br. 10, concerned whether organizations could assert third-party standing to challenge expedited removal regulations under § 1252(e)(3), *see* 199 F.3d at 1357-361, not the scope of relief available when individual noncitizens brought a challenge under § 1252(e)(3).

8

vacate and enjoin the illegal *Rule* because it violates § 1158 and the APA. Section 1252(f)(1) therefore "poses no bar." *Grace v. Whitaker*, 344 F.3d at 143; *see also O.A.*, 2019 WL 3536334, at *33-34; *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) ("Section 1252(f)(1) 'prohibits only injunction of "the operation of" the detention statutes, not injunction of a *violation* of the statutes.'") (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010)); PI Reply 9.

As to those Plaintiffs in regular removal proceedings, Defendants contend that their claims must be raised in administrative immigration proceedings. Def. Supp. Br. 11. But 8 U.S.C. § 1252(b)(9) applies only to issues "arising from" removal proceedings. *Jennings*, 138 S. Ct. at 840-41 (plurality opinion); *see also id.* at 841 n.3. The issues here do not "arise from" removal proceedings; the Rule blocks affected individuals from obtaining asylum in *any* way, including those applying affirmatively for asylum outside of removal proceedings and unaccompanied children who may apply affirmatively despite being in removal proceedings. *See* PI Reply 5-7; *Regents*, 908 F.3d at 504 n.19 (*Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007)); *O.A.*, 2019 WL 3536334, at *11-14. Section 1252(a)(5), which governs "judicial review of orders of removal," likewise does not apply. *See* PI Reply 5-7; *Singh*, 499 F.3d at 978; *O.A.*, 2019 WL 3536334, at *10-11.

### D. The Court Should Not Stay Any Relief Ordered.

The Court should not stay the effect of any decision awarding relief pending resolution of *East Bay Sanctuary Covenant v. Barr*. *Contra* Def. Supp. Br. 12-13. The Supreme Court did not provide any reasoning for its stay decision in that case, so that decision cannot be read to signal any particular view on the merits or the proper remedy here. *See* Stay Reply 15-16. If the

government wishes to seek a stay of this Court's summary-judgment decision, it can do so and present a full argument at that stage.  *See also CAIR* Supp. Br. II.2.

### III. Plaintiffs May Rely On Evidence Outside The Administrative Record In Support Of Jurisdiction And Injunctive Relief.

As to the merits, Plaintiffs do not believe it is necessary for the Court to consider extra-record facts to hold the Rule unlawful, and so do not press any exception to the "general prohibition against extra-record review." *Pac. Shores Subdiv. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) ("Consideration of extra-record information is appropriate when simply reviewing the administrative record is not enough to resolve the case.") (citing *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)).[5]

As to jurisdiction, Plaintiffs agree that "the Court may consider extra-record evidence submitted for the purpose of demonstrating the Court's jurisdiction over this case."  Def. Supp. Br. 3; *see also, e.g.*, *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); ECF No. 46 (Pls. Response to Def. SOF) 6.

Finally, contrary to the government's assertion, the Court may also properly consider extra-record evidence in evaluating irreparable harm, the equities, and the public interest.  *See* Pls. Response to Def. SOF 6; *Grace*, 344 F. Supp. 3d at 114; *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017).

---

[5] The Court may consider the *legal* views set forth in the UNHCR press release, *see* PI Br. 19, and the declaration of Professors Anker and Hathaway, ECF No. 6-3 (cited at PI Br. 30 and PI Reply at 21), just as it would consider similar legal arguments in an amicus brief.

Dated: October 23, 2019                           Respectfully submitted,

<div style="columns:2">

Katrina Eiland*
Cody Wofsy*
Julie Veroff*
Morgan Russell**
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

/s/Lee Gelernt
Lee Gelernt*
Omar Jadwat*
Anand Balakrishnan
Celso J. Perez (D.C. Bar No. 1034959)
Daniel Galindo*
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600

Keren Hart Zwick (D.D.C. Bar. No. IL0055)
Gianna Borroto
Charles George Roth
National Immigrant Justice Center
224 S. Michigan Avenue, Suite 600
Chicago, IL 60604
(312) 660-1370


*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*
*\*\*Pro hac vice application pending*

</div>

11